LAWRENCE R. MYERS, APPELLEE AND CROSS-APPELLANT, V.
THE NEBRASKA EQUAL OPPORTUNITY COMMISSION,
STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE.

582 N.W. 2d 362

Filed July 31, 1998.    No. S-97-480.

Don Stenberg, Attorney General, and Laurie Smith Camp for appellant.

Allan J. Eurek, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

The appellant, the Nebraska Equal Opportunity Commission (NEOC), agreed to pay the appellee, Lawrence R. Myers, to resign his position as executive director and relinquish his constitutional rights. The NEOC subsequently refused to honor the agreement. Myers brought suit, and the trial court concluded that the agreement was enforceable. The NEOC appealed, asserting that the trial court erred in various respects, including that the payment amounted to an unconstitutional gratuity, in violation of article III, § 19, of the Nebraska Constitution. We conclude that the payment was supported by consideration and, thus, that the payment was not an unconstitutional gratuity. We affirm.

## BACKGROUND

The following recitation of events was taken from a joint stipulation of facts and from exhibits offered as part of the stipulation.

Myers was the executive director of the NEOC, serving at the pleasure of the commission pursuant to Neb. Rev. Stat. §§ 48-1007(1) and 48-1116 (Reissue 1993). On June 28, 1995, the chairperson of the NEOC conducted a telephone conference call with the other commissioners to inform them of a reporter's allegations concerning a "love note" from an NEOC employee to Myers. As a result, Myers was suspended, pending an investigation. The fact of the existence of the note appeared in newspapers in both Lincoln and Omaha, and the vote of the NEOC to suspend Myers was made public. On June 29, a reporter from the Omaha World-Herald made allegations to the chairperson that Myers had fathered children out of wedlock with staff members of the NEOC.

Myers denied the allegations that the note was a "love note," that he had any relationship with the employee who wrote the note, and that he fathered any children of staff members.

On June 30, 1995, the commission conducted another telephone conference call in which the chairperson told the other commissioners that she had spoken with the NEOC staff and that the staff was opposed to having another investigation of the agency. The commissioners decided to explore the possibility of Myers' resignation.

Later that day, the chairperson spoke with Myers about reaching an agreement whereby Myers would agree to resign and would be paid somewhere between 6 months' and a year's pay. After speaking with his attorney, Myers gave the chairperson a letter of resignation, which was conditioned on an agreement being reached on the amount to be paid.

The commissioners conducted a third conference call on July 3, 1995, during which the commissioners expressed concern over the effect of another investigation, apparently because a prior investigation had significantly reduced the morale and productivity of the NEOC staff. As a result of this meeting, the commissioners directed the chairperson to draft an agreement. A purported agreement was memorialized by Myers and the NEOC that same day, and the commission submitted a request for payment to the Nebraska Department of Administrative Services.

The director of the Department of Administrative Services and the State Treasurer raised questions concerning the propriety of the agreement. Pursuant to their request, the Attorney General's office examined the NEOC's actions and declared the agreement void because the NEOC had not complied with the Nebraska public meetings law. This decision also voided Myers' suspension.

On August 25, 1995, another agreement between the NEOC and Myers was approved by the NEOC at a properly called and conducted meeting.

According to the terms of the agreement, Myers was to release the NEOC from any claims he might have against it and resign his position as executive director in return for a compensatory payment of $35,000 and another payment of $12,314, from which normal payroll deductions were to be made. The agreement purported to constitute the entire agreement between the parties, superseding all previous agreements.

Once again, however, the director of the Department of Administrative Services requested an opinion from the Attorney General as to the validity of the agreement, and the State Treasurer refused to sign a warrant for payment.

On September 13, 1995, the Attorney General authored another opinion letter, this time stating that the payments need not be made to Myers because they were excessive and constituted an unconstitutional gratuity.

On September 15, 1995, the NEOC met and voted that Myers should return to work. Myers did return to work on September 18, with the understanding that he did so only because the agreement had not been honored by the NEOC. Nonetheless, Myers did resign on September 30. The NEOC never paid Myers any amounts due pursuant to the agreement, and there are no conditions precedent that the NEOC claims Myers did not perform, although the NEOC did allege that *its* payment to Myers was a condition precedent.

Myers brought suit to enforce the agreement, and the trial court concluded that the agreement was enforceable. In his suit, Myers also asked for prejudgment interest, relief from the tax burdens he would sustain as a result of the new 1996 tax law, and attorney fees and costs. The district court did not award prejudgment interest, did not provide tax relief, and did not award attorney fees or costs.

## ASSIGNMENTS OF ERROR

The NEOC asserts that the district court erred in (1) failing to find that the payment to be made to Myers was a gratuity, in violation of article III, § 19, of the Nebraska Constitution and (2) finding that the NEOC had the authority to bind the State of Nebraska in an agreement which settled or compromised tort claims. On cross-appeal, Myers assigns as error the failure of the trial court to award him attorney fees, costs, and expenses pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1995).

## SCOPE OF REVIEW

The construction of the Constitution is a judicial function, and the Constitution is interpreted as a matter of law. See *Pig Pro Nonstock Co-Op v. Moore*, 253 Neb. 72, 568 N.W.2d 217 (1997).

On appeal, a trial court's decision allowing or disallowing attorney fees under § 25-824 for frivolous or bad-faith litigation will be upheld in the absence of an abuse of discretion by the trial court. See *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993).

## ANALYSIS

### WAIVER

During oral argument, the NEOC asserted that Myers waived any rights he might have had under the agreement when he returned to work on September 18, 1995. However, the NEOC did not raise this issue in the pleadings, assign this issue as error on appeal, or argue this issue in its brief. Errors which are argued but not assigned will not be considered by an appellate court. *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998). Likewise, errors assigned but not argued will not be addressed. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997). Thus, we will not address this issue.

### STATE TORT CLAIMS ACT

The NEOC also argues that the agreement to compensate Myers violated Neb. Rev. Stat. § 81-8,211 (Reissue 1996) of the State Tort Claims Act. Myers asserts that failure to comply with the provisions of the State Tort Claims Act is an affirmative defense, which must be pled, and that since it was not pled in the instant case, it may not be addressed on appeal.

Section 81-8,211 states in part:

Authority is hereby conferred upon the State Claims Board, acting on behalf of the State of Nebraska, to consider, ascertain, adjust, compromise, settle, determine, and allow any tort claim. If any tort claim is compromised, settled, or allowed in an amount of more than five thousand dollars, the unanimous approval of all members of the State Claims Board shall be required and such claims also shall be submitted for approval by the district court for Lancaster County.

Although this court has never addressed § 81-8,211 of the State Tort Claims Act, the plain language of the statute indicates

that its application is limited to tort claims that have been instituted pursuant to the act. If a tort claim has not been instituted against the State, then § 81-8,211 is inapplicable.

In the instant case, Myers brought his action in contract, pleading that he filed a claim with the State Claims Board pursuant to Neb. Rev. Stat. § 81-8,302 et seq. (Reissue 1996), the State Contract Claims Act, and that he notified the board that he did not desire that the board hear his claim, pursuant to § 81-8,305(3). In its answer, the NEOC made allegations in contract concerning consideration and conditions precedent, and an allegation concerning article III, § 19, of the Nebraska Constitution, but did not plead that the agreement at issue was in any way related to a tort, nor did the NEOC make any allegations concerning the State Tort Claims Act. Likewise, the NEOC made no allegations that Myers' claim was improperly brought pursuant to the State Contract Claims Act.

Based on these facts, it is obvious that the trial court was never given an opportunity to decide whether the agreement at issue was subject to the State Tort Claims Act and, such being the case, could not have committed error in that regard. Cases are heard in the state appellate courts on the theory upon which they were tried. *Cheloha v. Cheloha, ante* p. 32, 582 N.W.2d 291 (1998). An issue not presented to the trial court may not be raised on appeal, inasmuch as a lower court cannot commit error in resolving an issue it was never given an opportunity to resolve. See *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

UNCONSTITUTIONAL GRATUITY

Finally, the NEOC argues that the amount to be paid to Myers pursuant to the agreement was an unconstitutional gratuity, in violation of article III, § 19, of the Nebraska Constitution, which applies to the State and its political subdivisions. See *Retired City Civ. Emp. Club of Omaha v. City of Omaha Emp. Ret. Sys.*, 199 Neb. 507, 260 N.W.2d 472 (1977). Article III, § 19, states in pertinent part that "[t]he Legislature shall never grant any extra compensation to any public officer, agent, or servant after the services have been rendered . . . ."

Clearly, when the "services" for which compensation is granted are rendered prior to the date the determination to pay

is made, the "benefits awarded are not compensation but are a gratuity." *Wilson v. Marsh*, 162 Neb. 237, 252, 75 N.W.2d 723, 732 (1956). See, also, *Gossman v. State Employees Retirement System*, 177 Neb. 326, 129 N.W.2d 97 (1964). "A payment of compensation to a public servant constitutes extra compensation whenever there is no legal obligation to pay such compensation." *Matter of Mullane v. McKenzie*, 269 N.Y. 369, 377, 199 N.E. 624, 627 (1936).

The NEOC argues that it was not legally obligated to pay Myers pursuant to the agreement and, thus, that the payment can only represent extra compensation for Myers' service as executive director of the NEOC. According to the NEOC, it was not legally obligated to pay pursuant to the agreement because the agreement was not supported by adequate consideration (the only consideration being Myers' past service). Myers, however, argues that his resignation and relinquishment of due process rights provided adequate consideration to support the agreement.

Thus, the issue is whether Myers' resignation and relinquishment of due process rights constituted adequate consideration to support a binding contract. If so, the NEOC legally obligated itself to pay Myers the amount specified, and the payment is not an unconstitutional gratuity.

We have held that consideration is sufficient to support a contract if there is any detriment to the promisee or any benefit to the promisor. *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994). The NEOC argues that because Myers was an "at will" employee, no payment was necessary to secure his resignation. Thus, according to the NEOC, the NEOC would have received no benefit for the payment and Myers would have suffered no detriment from his resignation and relinquishment of constitutional rights, rendering the agreement without consideration.

It is true that we have held that when employment is not for a definite term and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause it chooses without incurring liability. *Overmier v. Parks*, 242 Neb. 458, 495 N.W.2d 620 (1993). However, while a governmental at-will employee may be discharged for no reason at all, he or she may not be discharged on a basis that infringes upon con-

stitutionally protected interests. *Wood v. Tesch*, 222 Neb. 654, 386 N.W.2d 436 (1986), *overruled on other grounds by Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989). Thus, the State cannot discharge an employee for whatever cause it chooses. See *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997) (holding that State cannot condition public employment on basis that infringes employee's constitutionally protected interest in freedom of expression). See, also, *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623 (2d Cir. 1996) (stating that discharge motivated by unconstitutional reason is impermissible, whatever terms of employment).

"When acting as an employer, the state must still heed the Fourteenth Amendment's command not to 'deprive any person of life, liberty, or property, without due process of law.'" *Donato*, 96 F.3d at 626. In the instant case, it is clear that Myers had no property interest in his employment, since he stipulated that he served "at the pleasure of the Commission." However, Myers does assert that he had a liberty interest in a hearing to clear his name and reputation, as set out in *Donato*, and that his relinquishment of his liberty interest was adequate consideration.

If, upon the termination of the employment of an employee, an employer makes "a charge 'that might seriously damage [the employee's] standing and associations in his community' or 'impose[s] on [such employee] a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities'" without due process of law, then that employee's liberty interest is violated. *Campanelli v. Bockrath*, 100 F.3d 1476, 1478 (9th Cir. 1996), quoting *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Stigmatizing comments include charges of illegality, dishonesty, or immorality, and in order to violate a state employee's liberty interest, such comments must be publicly disclosed. See *Donato, supra.* However, public disclosure of stigmatizing comments violates a state employee's liberty interest only when the employee asserts that the comments are untrue. When the employee disputes the accuracy of the government employer's

comments, a "hearing must be held for the limited purpose of giving a discharged employee an opportunity to clear [his or] her name," *Donato*, 96 F.3d at 633, which hearing satisfies the demands of due process.

In the instant case, Myers had a legitimate due process claim to a name-clearing hearing. Allegations of sexual involvement with subordinate employees would certainly qualify as stigmatizing to an employee whose career required the investigation of sexual harassment claims. Such allegations would also tend to seriously damage his standing and associations in the community. Finally, we note that the allegations against Myers and the reasons for his suspension by the NEOC were publicized by the NEOC and that Myers consistently challenged their accuracy.

Despite Myers' legitimate claim to a name-clearing hearing, the NEOC clearly indicated that it did not wish to conduct an investigation of the allegations against Myers or hold a hearing. The commission believed that an investigation and hearing would be detrimental to the functioning of the agency and was to be avoided. Considering that the agreement to compensate Myers was entered into by the NEOC to prevent any impairment in its operation, it is reasonable to conclude that Myers' relinquishment of his claim to a name-clearing hearing constituted a "benefit" to the NEOC. Indeed, the NEOC, through the Attorney General's office, stipulated that the NEOC had "a legitimate interest in avoiding disruption to the conduct of the N.E.O.C.'s business."

Likewise, Myers' relinquishment of the right to a name-clearing hearing was a detriment.

Because the NEOC received the benefit of Myers' relinquishment of his claim to a name-clearing hearing and Myers suffered a corresponding detriment, we conclude that Myers' status as an at-will employee did not render the agreement without consideration.

Our conclusion that the agreement was supported by consideration is in no way a validation of its prudence. Indeed, the public may have a strong interest in rejecting payments to government employees accused of wrongdoing, even if avoiding that payment is detrimental to the functioning of the employing agency. Nonetheless, this court is not a superagency. The wis-

dom of the severance agreement was for the NEOC to determine. Our authority is limited to determining whether the bargain violated the Constitution, and not whether the bargain was prudent.

### CROSS-APPEAL

On cross-appeal, Myers argues that he is entitled to an award of attorney fees and costs because one of the three defenses raised by the NEOC was frivolous and made in bad faith. The trial court determined that the defense in the instant case was not frivolous or in bad faith in any part, and we conclude that the trial court did not abuse its discretion in so determining.

### CONCLUSION

We conclude that the agreement was not an unconstitutional gratuity and is enforceable. We also conclude that Myers is not entitled to an award of attorney fees.

AFFIRMED.