ROBIN ALETA HARRIS, APPELLEE, V.
TERRY FRANCIS HARRIS, APPELLANT.

621 N.W. 2d 491

Filed January 19, 2001.   No. S-99-914.

Mark S. Bertolini, of Bertolini, Schroeder & Blount, for appellant.

David Riley for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Terry Francis Harris appeals from the July 14, 1999, order of the Sarpy County District Court, which dissolved Terry's marriage to Robin Aleta Harris; awarded custody of the parties' two children to Robin, with reasonable rights of visitation granted to Terry; and divided the parties' marital property. Terry challenges the district court's division of certain property. For the reasons stated below, we affirm as modified.

## STATEMENT OF FACTS

Terry and Robin were married on October 1, 1987. The couple have two children, twin daughters, who were minors at the time of the dissolution. At the time the parties married, Robin was 18 years old and had graduated from high school. Terry was on active duty with the U.S. Air Force, a career he had begun in January 1972. Terry holds a bachelor of arts degree from Bellevue University and an associate degree from Los Angeles Community College.

Robin worked during a large portion of the parties' marriage. Before the birth of the children, she worked for a temporary service, a position she left when the twins were born. In 1989, she worked for approximately 9 months with First Data Resources. She left that position to care for the couple's children. Two years later, she began working for Sears Credit Central in Omaha, but she was forced to leave this employment when Terry was assigned by the Air Force to remote service in Alaska.

In April 1992, Robin began working and studying at the Montclair Nursing and Rehab Center in Omaha, with the goal of becoming a certified nursing assistant. She obtained her certification approximately 6 months later, and in September, Robin started employment at the Huntington Park Care Center in Omaha. In 1999, Robin began working at the Douglas County Hospital, where she was earning $10.51 per hour working approximately 40 hours per week on an on-call basis at the time of trial.

In January 1998, Terry retired from the Air Force after 26 years of service with the rank of senior master sergeant. He was receiving a military pension at the time of trial. During the par-

ties' marriage, Terry had purchased a survivor benefit plan (SBP) in favor of Robin, which plan guaranteed that Robin would receive her share of Terry's pension in the event she survived him. The monthly premium for the SBP was $137.68. After deducting certain payments, Terry's income from his military pension was $1,893 per month. At trial, the parties stipulated that Robin was entitled to 19.7 percent of Terry's military pension.

At the time of trial, Terry was employed by the U.S. Postal Service, working between 32 and 50 hours per week, at a base hourly rate of $13.88, plus a 10-percent nighttime differential. Terry also worked part time for the Omaha Park and Recreation Department as a sports official, for which he earned $2,778 in 1998. Terry was also employed part time as a schoolbus driver for Laidlaw Transit, Inc., where he worked approximately 10 to 12 hours a week at $10.25 per hour.

The family residence is located at 3259 Briar Oak, Omaha, Nebraska, and was purchased by Terry in 1982. The record shows the value of the home in 1982 was $54,500; however, the record does not show what Terry's equity in the residence was at the time of the 1987 marriage. In 1992, the parties encumbered the residence with a mortgage from Chase Manhattan Mortgage Corporation. In 1996, the parties obtained a second mortgage on the residence from Commercial Credit Corporation. At the time of trial, the two debts served by these mortgages were in the approximate amounts of $45,600 and $15,000, respectively. During the divorce proceedings, the parties stipulated that the residence was worth $82,000.

In December 1984, Terry opened a mutual fund savings plan (savings fund). The savings fund was intended to be a 15-year systematic investment plan, with a monthly investment of $300. Prior to the parties' marriage, the savings fund contained 186.5 shares, valued at $11.42 per share, for a total value of $2,129.83. During the parties' marriage, Terry continued to make the monthly $300 investment. Robin's name was not added to the savings fund.

Throughout the parties' marriage, the parties maintained essentially separate financial accounts. Terry paid the mortgages and certain household expenses. Robin used her income to buy clothing for herself and the children, to pay for the children's

school supplies and activities, and to purchase groceries and other household necessities. Robin was the primary caregiver for the children. The record shows Terry engaged in gambling.

Terry testified that he reported $3,662.50 in gambling winnings on his income taxes in 1995 and $5,600 in 1996. He testified that he had gambling losses but that he could not remember the amounts of those losses for tax years 1995 through 1998.

Beginning in May 1995, Terry began making large withdrawals from the savings fund. Terry deposited all of the amounts that he withdrew into a credit union account in his name. Robin was not an authorized party on the credit union account, nor was she a signatory. Robin testified at trial that she was not aware of these withdrawals. The chart below details the dates and amounts of Terry's withdrawals from the savings fund.

| Date of Withdrawal | Amount of Withdrawal |
|---|---|
| May 1, 1995 | $ 5,504.00 |
| February 9, 1996 | 13,296.00 |
| April 15, 1996 | 9,795.00 |
| November 8, 1996 | 6,200.00 |
| January 6, 1997 | 4,672.00 |
| April 7, 1997 | 100.00 |
| April 7, 1997 | 1,073.06 |
| April 21, 1997 | 1,182.00 |
| June 16, 1997 | 675.00 |
| July 16, 1997 | 1,037.25 |
| August 8, 1997 | 706.00 |
| September 22, 1997 | 727.00 |
| October 20, 1997 | 725.00 |
| November 11, 1997 | 714.00 |
| December 17, 1997 | 370.00 |
| April 13, 1998 | 757.50 |
| May 26, 1998 | 749.00 |
| June 16, 1998 | 373.75 |
| Total | $48,656.56 |

By June 1998, the savings fund held only 11.184 shares, worth a total of approximately $167.21.

Robin first filed for divorce in 1990, and she and Terry separated for approximately 1 year. The testimony indicates the par-

ties were estranged in 1995. According to the testimony, in April 1995, Robin "asked" Terry for a divorce. On May 27, 1998, Robin again filed to dissolve the parties' marriage.

During the course of the divorce proceedings, the district court entered temporary orders with regard to support and maintenance issues. One such order, entered July 9, 1998, awarded Robin the temporary and exclusive use of the family residence and required that she pay the monthly mortgage statements and utility bills. At some point, Robin apparently fell behind in these payments, and Terry was forced to pay an arrearage of $1,744 (arrearage) to satisfy these obligations. In a temporary order dated November 13, the district court "preserved" the arrearage. During the divorce proceedings, the parties stipulated to the existence and amount of the arrearage attributable to the mortgages and utilities.

Trial was held on Robin's dissolution petition on March 15, 1999. In the decree entered July 14, the district court determined that the parties' marriage was irretrievably broken and should be dissolved. The district court awarded custody of the parties' two children to Robin, with reasonable rights of visitation to Terry. Terry was ordered to pay child support in the amount of $880 per month for two children as well as alimony to Robin in the sum of $1 per year for a period of 10 years. The parties were to split child-care expenses and expenses for health care that were not covered by insurance. Personal property and debts were divided between the parties in accordance with documentary evidence received at trial. None of those provisions of the decree are challenged on appeal. The decree contained further orders pertaining to property with which Terry takes issue. The issues raised by Terry on appeal involve the arrearage incurred during the pendency of the dissolution action, the SBP, the residence, and the savings fund.

The district court awarded Terry the family residence as his sole property, subject to the first and second mortgages, for which Terry was ordered to be solely responsible. The district court awarded Robin $375 per month from Terry's Air Force pension and ordered Terry to continue to pay the cost for the SBP in favor of Robin. The district court also found that Terry had dissipated the parties' savings fund and ordered Terry to pay

Robin $24,000, representing Robin's share of the savings fund before dissipation. In connection with this determination, Terry was ordered to pay to Robin installments of $500 per month for a period of 48 months. It is from these various provisions of the decree that Terry appeals.

Terry filed his notice of appeal on August 11, 1999. Additional facts will be set forth below where pertinent to our analysis of Terry's assignments of error.

### ASSIGNMENTS OF ERROR

Terry assigns five errors which combine to form four. Terry claims, restated, that the district court erred (1) in failing to order Robin to repay Terry the amount of the arrearage which Terry paid during the pendency of the dissolution proceedings due to Robin's failure to comply with a temporary order entered by the district court; (2) in requiring Terry to pay for the SBP; (3) in failing to set off as Terry's separate property the savings fund and the parties' residence; and (4) assuming arguendo that the savings fund was marital property, in finding that Terry had dissipated the parties' savings fund and ordering Terry to pay Robin $24,000 as Robin's share of the dissipated savings fund.

### STANDARDS OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000); *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000); *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). The division of property is a matter entrusted to the discretion of the trial judge, which will be reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. *Heald v. Heald, supra.* In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Brunges v. Brunges, supra; Heald v. Heald, supra.*

### ANALYSIS

Terry claims on appeal that certain portions of the decree in which the district court divided the parties' marital assets are

unreasonable and unfair. As stated above, the division of marital property is a matter initially entrusted to the trial judge, and on appeal, we will not disturb the trial court's findings, absent an abuse of discretion. *Heald v. Heald, supra.* Following our de novo review of the record, we conclude the district court abused its discretion with respect to its treatment in the decree of the savings fund. As set forth more fully below, we modify in two respects that portion of the decree that awarded Robin a proportionate share of the savings fund. We first deduct as Terry's separate property the value of the savings fund prior to the parties' marriage. Second, we modify the decree by reducing the amount of the savings fund which Robin is to receive.

*Arrearage: Temporary Support Order.*

On appeal, Terry assigns as error the district court's failure to order Robin to repay to Terry the amount of the arrearage which Terry paid but which was Robin's responsibility under the temporary order. In the argument section of his brief, Terry purports to argue this assigned error as follows: "The court apparently failed to take into consideration the approximate amount owed by [Robin] to [Terry] pursuant to the Temporary Order." Brief for appellant at 18-19. Terry follows this statement in his brief with four citations to pages in the bill of exceptions which refer to the temporary order. Terry's brief does not contain any legal discussion or argument regarding this claimed error. Errors assigned but not argued will not be addressed. *Van Ackeren v. Nebraska Bd. of Parole,* 251 Neb. 477, 558 N.W.2d 48 (1997). In this same section of his brief, Terry states that the district court also failed to take into consideration a loan that Robin received which was secured by a motor vehicle. We note that Terry did not assign this claim as error. Errors argued but not assigned will not be considered on appeal. *Myers v. Nebraska Equal Opp. Comm.,* 255 Neb. 156, 582 N.W.2d 362 (1998). Accordingly, we do not address either of these claims.

*Survivor Benefit Plan (SBP).*

On appeal, Terry claims that the district court erred by requiring him to pay the SBP. We do not agree.

This court has recognized that in dissolution actions, the marital estate includes only that portion of a pension which is

earned during the marriage. See, *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998); *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). See, also, Neb. Rev. Stat. § 42-366(8) (Reissue 1998). As stated above, Terry's monthly retirement pay as a result of his military pension was $1,893 after deducting certain payments from this amount. Terry paid $137.68 per month for the SBP. At trial, the parties stipulated that Robin was entitled to 19.7 percent of Terry's military pension. The district court awarded Robin $375 per month from Terry's Air Force pension which, in actuality, equals 19.8 percent of Terry's monthly retirement after deducting certain payments. Terry does not challenge this award, but he argues on appeal that the district court erred in ordering him to pay the SBP premium of $137.68 per month.

This court has not addressed the issue of whether it is appropriate to order one spouse to pay an SBP premium which favors another spouse. In *Kramer v. Kramer*, 1 Neb. App. 641, 510 N.W.2d 351 (1993), however, the Nebraska Court of Appeals considered whether, in a dissolution action, the district court abused its discretion in not ordering a former spouse to pay for an SBP. The Court of Appeals recognized that federal law requires military pension benefits to terminate with the death of the soldier, absent the purchase of an SBP. In *Kramer*, the Court of Appeals noted that without the SBP payments, if a soldier died prematurely, his or her spouse would be deprived of the ownership of this marital asset. If the soldier purchased an SBP, however, "benefits can continue to be paid to the beneficiary, including a former spouse." *Id.* at 649, 510 N.W.2d at 356. The Court of Appeals reasoned that requiring the purchase of an SBP "gives the division of a nondisability military pension more of the attributes of a true property division." *Id.* On remand, the Court of Appeals ordered the soldier husband to purchase an SBP for his wife as part of his pension benefits.

A similar approach has been followed by a number of other jurisdictions. See, e.g., *In re Marriage of Payne*, 897 P.2d 888, 889 (Colo. App. 1995) (ordering husband to pay for wife's SBP gives wife right already enjoyed by husband, that is "the right to receive her share of the marital property awarded to her"); *Haydu v. Haydu*, 591 So. 2d 655 (Fla. App. 1991) (trial courts

have discretion to order spouse to maintain annuity for former spouse under SBP); *Smith v. Smith*, 190 W. Va. 402, 438 S.E.2d 582 (1993) (ordering husband in dissolution action to purchase and pay for SBP for wife to avoid unfairness of wife's receiving nothing if husband predeceases her).

In the instant case, the SBP is necessary to guarantee that Robin continues to receive an important marital asset if Terry, who is 15 years her senior, predeceases her. Terry testified that he voluntarily purchased the SBP for Robin while the parties were married, and it is undisputed that since Terry's retirement from the military, the SBP payments have been subtracted from Terry's pension checks.

In dissolution actions, district courts have broad discretion in valuing pension rights and dividing such rights between the parties. See, *Shockley v. Shockley, supra*; *Rockwood v. Rockwood*, 219 Neb. 21, 360 N.W.2d 497 (1985). The district court's order maintains the character of this marital asset, thereby guaranteeing that Robin will continue to be eligible to receive a marital asset awarded to her in the event Terry predeceases her. The district court did not abuse its discretion by requiring Terry to pay for the SBP.

*Savings Fund and Residence as Marital Assets.*

In the decree, the district court treated the savings fund and the parties' residence as marital assets. The district court split the value of the savings fund prior to the withdrawals by Terry commencing in 1995 between the parties and awarded Terry the parties' residence. Terry argues on appeal that the district court erred in not setting aside, as his separate property, the savings fund and the parties' residence.

Initially, we note that prior to the time the parties were married, the savings fund contained 186.5 shares, valued at $11.42 per share, for a total value of $2,129.83. This amount was an asset which Terry brought into the marriage and should have been set aside as his separate property. See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000) (property which party brings into marriage is generally excluded from marital estate). We will discuss Terry's separate interest in the savings fund in greater detail below in which we conclude that with the exception of the

$2,129.83 value of the savings fund which Terry brought into the marriage, the savings fund was a marital asset which Terry partially dissipated during the time the parties were estranged.

On appeal, Terry urges that the entirety of the savings fund is his separate property. This court has long held that as a general rule, all property accumulated and acquired by either spouse during the marriage is part of the marital estate. See, generally, *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). Terry argues that because he brought the savings fund into the marriage, the savings fund was solely in his name, and he made the deposits to the savings fund, the entirety of the savings fund belongs to him. We disagree.

Terry's argument ignores the fact that during the parties' marriage, the savings fund grew as a result of income Terry earned during the parties' marriage. Terry's income which accumulated during the parties' marriage was a marital asset. Compare, *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000) (holding income tax liability incurred during marriage is one of accepted costs of producing marital income and should be treated as marital debt for purposes of determining equitable distribution of marital estate); *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999) (compensation spouse receives from personal injury lawsuit for lost wages that compensates for diminution of marital estate properly included in marital estate in dissolution action); *Gibson-Voss v. Voss*, 4 Neb. App. 236, 541 N.W.2d 74 (1995) (workers' compensation award properly treated as marital property to extent it recompenses for loss of income during marriage).

The money that Terry deposited into the savings fund was an asset belonging to both Terry and Robin. Thus, that portion of the savings fund which accumulated during the parties' marriage was a marital asset, regardless of the fact that the savings fund was in Terry's name. Accordingly, the district court did not abuse its discretion in including in the marital estate that portion of the savings fund that was accumulated during the parties' marriage.

With respect to the residence, initially, we note that the district court gave Terry full and complete title to the house, but did not set it aside as his separate property. On appeal, Terry argues

that since he owned the parties' residence at 3259 Briar Oak prior to the parties' marriage, the district court should have set the residence aside as Terry's separate property. The record indicates that the house was an asset that Terry brought into the marriage. We agree with Terry that the equity in the house at the time of the parties' marriage was an asset which, if established, should be set aside as Terry's separate property. See *Heald v. Heald, supra.* We disagree, however, with Terry's claim that he is entitled to the entirety of the equity of the residence at the time of dissolution.

During the parties' marriage, equity in the house grew, in part due to mortgage payments made from marital income. At trial, Robin adequately demonstrated, through documentary and testimonial evidence, that she paid for certain home improvements. Compare *Tyler v. Tyler*, 253 Neb. 209, 570 N.W.2d 317 (1997). The equity in the house grew during the parties' marriage and is a marital asset, which growth in equity should be divided equitably between the parties. See, generally, *Ward v. Ward*, 7 Neb. App. 821, 585 N.W.2d 551 (1998).

In the instant case, the record reflects that at the time of the dissolution action, the house was worth $82,000, but was encumbered by two mortgages in the approximate amounts of $15,000 and $45,600. Thus, at the time of the dissolution proceedings, it appears that there was approximately $21,400 of equity in the house. The record also reflects that at the time the parties married, the house was worth approximately $54,000. The record does not reflect, however, the equity Terry had in the house at the time of the marriage.

The burden of proof to show that property is a nonmarital asset remains with the person making the claim. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). Therefore, Terry has the burden of showing the equity in the house at the time of the parties' marriage.

A review of the record shows that Terry has failed to meet this burden. Although the record in this appeal contains evidence of the value of the house at the time Terry and Robin were married, there is no evidence by which to determine whether the house was either encumbered or unencumbered and, if encumbered, to what extent. At oral argument in this case, Terry's counsel con-

ceded the record was silent on the issue of the equity in the house, if any, at the time of the marriage. We therefore conclude that the district court did not err in including the entirety of the equity in the residence in the marital estate.

*Dissipation of Assets.*

██ Terry's final assignment of error claims, assuming arguendo the savings fund is a marital asset, that the district court erred in concluding that Terry dissipated over $48,000 of the parties' savings fund and that he must repay Robin her share of the savings fund. We agree with the district court that during the breakdown of the marriage to the extent Terry used moneys from the savings fund accumulated during the marriage for purposes other than paying for marital expenses, he dissipated a marital asset and should be ordered to repay Robin her share of the moneys Terry dissipated from the savings fund. The district court erred, however, first in its determination of the amount of money which Terry dissipated from the savings fund and, second, in failing to set aside the $2,129.83 which was in the savings fund prior to the time of the parties' marriage as Terry's separate property.

We have reviewed this case de novo on the record for abuse of discretion, as we must. See *Brunges v. Brunges, supra.* We note that although the record regarding Terry's financial evidence is deficient in several respects, certain facts have been established. First, with respect to the amount dissipated, the record shows that from May 1, 1995, until June 16, 1998, a period of time during which the parties were estranged, Terry withdrew $48,656.56 from the savings fund, and by way of testimonial and documentary evidence, he has accounted for having spent $30,938.96 on marital expenses. See *Brunges v. Brunges,* 260 Neb. 660, 619 N.W.2d 456 (2000). The expenses which Terry has demonstrated were marital expenses include payments for such things as car payments, utilities for the home, and supermarket purchases. Accordingly, rather than finding that the entire $48,656.56 had been dissipated by Terry, the district court should have deducted the $30,938.96 used for marital expenses from the value of the savings fund when determining the amount to be treated as a dissipation of marital property.

Second, with respect to the amount of the savings fund prior to the time of the marriage, the record demonstrates that the savings fund was worth $2,129.83. Terry adequately demonstrated that this was his separate property. See *Heald v. Heald, supra.* The district court erred in failing to set aside the $2,129.83 portion of the savings fund which existed prior to the marriage as Terry's separate property.

Dissipation of marital assets is generally defined as "one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown." 24 Am. Jur. 2d *Divorce and Separation* § 560 (1998). See, generally, Annot., 41 A.L.R.4th 416 (1985).

In *Brunges v. Brunges,* 260 Neb. at 667, 619 N.W.2d at 462, this court held that in a marital dissolution action, the trial court erred in not including in the marital estate assets "liquidated" by one spouse after the parties had separated and for which that spouse had not properly accounted. See, also, *Pittman v. Pittman,* 216 Neb. 746, 345 N.W.2d 332 (1984) (husband's substantial withdrawals from parties' joint savings account following their separation taken into account during division of marital assets).

Other jurisdictions have similarly included in the marital estate marital assets expended by one spouse for purposes unrelated to the marriage after the marriage was irretrievably broken. In *Bratcher v. Bratcher,* 26 S.W.3d 797 (Ky. App. 2000), for example, the court found that testimony which established that almost $80,000 worth of marital assets was unaccounted for and not used for a marital purpose was sufficient to demonstrate dissipation of marital assets. The Kentucky Court of Appeals observed that "[s]uch dispersal of marital property without an accounting is sufficient justification to include the unaccounted amount in the total marital assets." *Id.* at 799.

In *In re Marriage of Morrical,* 216 Ill. App. 3d 643, 576 N.E.2d 465, 159 Ill. Dec. 796 (1991), the evidence demonstrated that the husband had sold stocks worth $32,000 at a time when the marriage was undergoing difficulty. At trial, the husband failed to give a satisfactory accounting as to what had happened to the money and the husband admitted some of the money was

used for gambling. The trial court in *In re Marriage of Morrical* concluded that the evidence was sufficient to show that the husband had dissipated the $32,000. The appellate court affirmed the trial court's award of one-half of the $32,000 to the wife in its division of the marital assets.

The record in the instant case demonstrates that following Robin's "request" for a divorce from Terry in 1995, Terry began to make repeated and substantial withdrawals from the parties' savings fund. In this regard, we note that exhibits in the record demonstrate that at the same time that Terry was withdrawing sums from the savings fund and depositing them into his individual bank account, he was also making withdrawals from automatic teller machines located at Ameristar Casino Hotel and Bluffs Run Casino, gambling casinos in Council Bluffs, Iowa, and testimony establishes that Terry was incurring gambling losses. Terry offered some evidence, however, as we have discussed above, that during this same time period, he was paying for certain household expenses and did not dissipate the entire $48,656.56 withdrawn from the savings fund during the time the parties were estranged. We have concluded upon review of this record that Terry has failed to demonstrate that the total amount he withdrew was expended on marital expenses.

The district court treated the entirety of the savings fund as a marital asset and ordered Terry to pay Robin approximately one-half of the value of the savings fund withdrawn by Terry between May 1995 and June 1998. The trial court failed to give Terry credit for the marital expenses he demonstrated and failed to treat the $2,129.83 in the savings fund prior to the time of the parties' marriage as Terry's separate property. Thus, we find errors by the trial court and modify the decree accordingly.

Prior to the parties' marriage, the savings fund was worth $2,129.83. As stated above, this amount was Terry's separate property in that this was an asset Terry owned prior to the marriage. See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). From April 1995 to June 1998, Terry withdrew $48,656.56, such that in June 1998, the savings fund held only 11.184 shares, worth a total of approximately $167.21. Adding the withdrawn amounts to the June 1998 balance gives the savings fund, on the record available to us, a total value of $48,823.77. Setting aside and sub-

tracting Terry's premarital asset of $2,129.83, we determine that the value of the savings fund as a marital asset was $46,693.94. From this amount, we subtract $30,938.96, which equals those moneys we determine Terry established were used for marital expenses. The remaining amount is $15,754.98. One-half of this amount, or $7,877.49, would properly be Robin's share of the savings fund. We modify the portion of the decree which awarded Robin $24,000 of the savings fund by reducing Robin's share to $7,877.49 and further modify the decree to order Terry to pay this amount to Robin in 15 monthly installments of $500 each, with a 16th and final installment of $377.49. In all other respects, the decree is affirmed.

## CONCLUSION

The decree is affirmed in all respects except for the trial court's treatment of the savings fund, which we modify in accordance with the opinion herein.

AFFIRMED AS MODIFIED.