DENTON W. BRUNGES, APPELLEE, V.
MARY E. BRUNGES, APPELLANT.
619 N.W.2d 456

Filed November 3, 2000.    No. S-99-1115.

Sally A. Rasmussen, of Mousel, Garner & Rasmussen, for
appellant.

Timothy W. Nelsen, of Fankhauser, Nelsen & Werts, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Mary E. Brunges appeals from a decree of dissolution entered by the district court for Johnson County on August 24, 1999. This was the second decree of dissolution entered in this action, as the judgment of the trial court was reversed by this court in *Brunges v. Brunges*, 255 Neb. 837, 587 N.W.2d 554 (1998), because the trial court relied solely on the pleadings to find that the marriage between Mary and Denton W. Brunges was irretrievably broken. Following retrial, the trial court entered a decree which dissolved the marriage, awarded custody of the minor children to Mary, provided for child support, and divided the marital estate. Mary appeals.

## SCOPE OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

■ In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id.*

## FACTS

Mary and Denton were married in Michigan on July 12, 1986, and four children were born to the marriage. Until April 1994, the parties lived together in Michigan, where they owned a home and Denton worked for Gerber Products Company (Gerber). During this time, Mary did not work outside the home.

In April 1994, the parties separated and Mary and the children moved to Nebraska. In late summer or early fall, Denton quit his

job, sold the family home, and relocated to Nebraska, where the parties attempted a reconciliation that lasted until April 1995.

Mary enrolled in college in the spring of 1995, and she anticipated graduating in December 1999. She was taking out student loans to pay for her education. She claimed to have no special training or skills that would otherwise allow her to find employment to support her children. Federal income tax returns indicate that Mary had a total income of $5,201 in 1995 and $2,292 in 1996.

From September 1994 until September 1996, Denton worked for Excel Corp. and Cargill Processed Meats (Cargill). During 1997, Denton worked for Maverick Media, Inc., Action Pig Co., and Larson Motors, Inc., where he was employed until August 1998. From August 1998 to the time of retrial in May 1999, Denton worked at Auburn Ford, Inc., as a parts manager. Denton's W-2 from Gerber indicated that he earned $25,558.49 in 1992. The parties' joint federal income tax returns indicated a total income of $30,605 in 1993 and $25,775 in 1994. Denton's federal income tax returns indicate that he had a total income of $16,941.17 in 1996; $12,465 in 1997; and $15,906 in 1998. Auburn Ford's payroll records indicate that he grossed $5,950 in the first quarter of 1999. At the time of retrial, Denton also had a 401K plan with Auburn Ford.

Denton received $2,000 from the sale of the family home in Michigan on August 12, 1994, and Mary denied receiving any of the proceeds. Denton filed for immediate full distribution of his retirement account with Gerber on March 20, 1995. He received approximately $7,000 that he claims to have "put towards [sic] bills." When the parties separated for the second time in 1995, Denton took with him a 1974 Chevrolet pickup truck, which he traded in on another car that was eventually wrecked. An affidavit filed by Denton stated a value of $2,500 for the pickup in 1996. By the time of the last hearing on this matter, the only marital assets remaining in the possession of Mary were some household personal belongings with a stated value of less than $400.

Denton filed the dissolution action at issue in this case in Johnson County, Nebraska, on July 1, 1996. Mary entered a voluntary appearance on July 16 and submitted her responsive

pleading on August 16. An order for temporary custody and support was filed on September 9, giving custody of the children to Mary and ordering Denton to pay $452 per month for support.

A hearing on the dissolution was held on December 18, 1996, at which time no witnesses testified and no depositions, exhibits, or written stipulations were offered or admitted into evidence. Both parties were present at the hearing, but neither party testified. The trial court ordered the marriage dissolved, and a decree of dissolution was filed on February 11, 1997. Mary subsequently appealed to the Nebraska Court of Appeals.

In a memorandum opinion filed May 7, 1998, the Court of Appeals affirmed the judgment with regard to the issues of dissolution and alimony, but reversed the judgment and remanded the cause for an evidentiary hearing on the issues of child support, visitation, and custody. Upon further review, we reversed the decision of the Court of Appeals and remanded the cause with directions to reverse the trial court's dissolution of the marriage and remand the cause for an evidentiary hearing pursuant to Neb. Rev. Stat. § 42-356 (Reissue 1998). See *Brunges v. Brunges*, 255 Neb. 837, 587 N.W.2d 554 (1998). Temporary custody of the children remained with Mary pending completion of the matters remanded to the trial court.

On remand, the case came on for retrial on May 26, 1999. After receiving the testimony of both parties and one witness, as well as a number of exhibits, the trial court took the matter under advisement and asked the parties' attorneys to submit briefs. After receiving the briefs, the trial court sent the attorneys an e-mail that read: "After a review of the evidence and briefs, the Court finds generally in favor of Mr. Brunges and against Mrs. Brunges. [Denton's attorney] to submit journal entry after approval as to form by [Mary's attorney]."

The trial court dissolved the marriage and awarded the care, custody, and control of the parties' children to Mary, subject to Denton's visitation. The trial court determined that Denton should pay child support in the amount of $295 per month and should carry health insurance on the minor children and that the parties would each pay 50 percent of any health care expenses not covered by insurance or medicaid. The trial court found that Denton's retroactive child support for the period beginning

January 1, 1997, and ending May 1, 1999, would be calculated at $50 per month and that each party would receive two dependency exemptions for income tax purposes.

The trial court awarded each party the personal property in his or her possession and directed Mary to provide Denton with certain personal effects which she might have in her possession. The trial court ordered that all debts incurred prior to April 30, 1994, should be paid one-half by Denton and one-half by Mary and that debts incurred thereafter were to be paid by the party incurring the debt. The trial court declined to award Mary alimony, finding that she had a greater earning capacity than Denton and that Denton had no ability to pay alimony. The trial court declined to order Denton to reimburse Mary for half of his retirement account disbursement or the proceeds received from the sale of their home in Michigan. The trial court also declined to award Mary attorney fees or costs. Mary timely appealed.

## ASSIGNMENTS OF ERROR

Mary assigns as error that the trial court erred (1) in failing to compensate her for marital assets that were liquidated by Denton following the parties' separation, (2) in failing to award her alimony, (3) in ruling that Denton's current 401K plan was not relevant, (4) in failing to read the decree of dissolution before signing it, (5) in not receiving into evidence certain exhibits, and (6) in failing to award her attorney fees or costs.

## ANALYSIS

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *id.*

■ An abuse of discretion occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Sharkey v. Board of Regents, ante* p. 166, 615 N.W.2d 889 (2000).

■ Because appeals in domestic relations matters are heard de novo on the record, an appellate court is empowered to enter the order which should have been made as reflected by the record. *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997).

■ Mary first argues that she was entitled to compensation for marital assets that were liquidated by Denton following the parties' separation. The marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). The issue is whether the trial court abused its discretion in not including previously liquidated assets as part of the marital estate.

At the time of trial, the only assets remaining were those in Mary's possession. These assets had a stated value of $336.50. They were awarded to Mary and are not in dispute. The dispute concerns assets that the parties acquired during their marriage which Denton claimed he spent or otherwise disposed of following the parties' separation. Those assets included Denton's Gerber retirement account, $2,000 received from the sale of the family home in Michigan, and a 1974 Chevrolet pickup truck.

During Denton's employment with Gerber in Michigan, he accumulated a retirement account. Exhibit 4 shows that Denton applied for distribution of these funds on March 20, 1995, and that his application was received by Gerber on March 24. The gross distribution was $8,802.88, of which $1,760.58 went to the Internal Revenue Service for federal taxes and $7,042.30 went to Denton as the net distribution. Denton testified that these funds were "put towards [sic] bills," but did not offer any testimony or documentation as to the specific bills that were paid. Mary did not receive any of these retirement funds.

During discovery, Denton was requested to produce documentation concerning retirement accounts from the date of the parties' marriage, including the Gerber retirement account; a

Cargill retirement account; and a 401K account that Denton and his employer, Auburn Ford, were contributing to in 1999. Denton's response to this discovery request stated: "Not applicable." Denton was further asked in interrogatories to identify any and all debts in his, Mary's, or the children's names that were outstanding at the time of the separation and the amounts paid. He identified one payment of $30 made to Gerber Federal Credit Union.

Mary also asserts that Denton did not account for $2,000 received from the sale of the family home in Michigan. When the real estate was sold, Mary and Denton were to receive $2,000 from the buyer. Denton testified that the parties each received $2,000 from the buyer. However, Mary testified that she did not receive any money from the sale of the real estate. The documents involving the sale of the real estate show that only Denton's signature was notarized. Mary's signature was apparently added after the document had been notarized. Denton testified that he had opened two accounts at American National Bank on September 19, 1994. One was a savings account in which he deposited $1,480.22 of the proceeds from the sale of the real estate, and the other was a checking account in which he deposited $400. There was no explanation by Denton as to what he did with the funds deposited into these two accounts.

The final item of property at issue was the 1974 Chevrolet pickup truck. At trial, Mary attempted to offer an affidavit Denton had filed in a prior action which showed the value of the pickup at $2,500. The trial court sustained Denton's objection as to relevance. Mary requests that we consider this affidavit as evidence of the value of the pickup in determining distribution of the property.

Mary argues that Denton did not adequately account for the proceeds of the Gerber retirement account or the real estate sale. We agree. In *Halouska v. Halouska*, 7 Neb. App. 730, 585 N.W.2d 490 (1998), the husband liquidated two marital brokerage service accounts during the pendency of the divorce. He testified at trial that he had used these funds to pay marital debts. The trial court ruled that without documentation, it could not determine whether those debts had been paid. The Court of Appeals affirmed on this issue, holding that without substantia-

tion of receipts, canceled checks, or statements, the trial court could not have taken the word of one party over another when it came to a determination of liquidated marital assets.

In *Choat v. Choat*, 218 Neb. 875, 359 N.W.2d 810 (1984), we concluded that the husband's failure to account for proceeds received from the sale of livestock as a marital asset was a circumstance which would be considered when assessing responsibility for payment of the marital debt. We held the husband accountable for the amount of proceeds received from the sale of the livestock and ordered him to pay the marital debts that could have been paid with those proceeds.

Here, the trial court ruled that the marital assets liquidated by Denton following the parties' separation did not have to be accounted for because of the lapse of time between the parties' separation and the retrial. We disagree. The date upon which the marital estate is valued should be rationally related to the property composing the marital estate. *Halouska v. Halouska, supra.* Here, the proceeds from the retirement account and the real estate were assets of the marriage. Without substantiation by receipts, canceled checks, or other evidence, the testimony of that party that he or she spent or otherwise disposed of the assets is not sufficient to support such allegation. See *id.* We conclude that Denton has not properly accounted for the retirement account funds or the proceeds from the sale of the real estate and that the trial court abused its discretion in not including them in determining the marital estate.

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000). From our de novo review of the record, we conclude that Mary should have been awarded a judgment of $4,500 as her share of the retirement account and the sale of the real estate. The trial court made no findings with regard to the 1974 Chevrolet pickup truck. The evidence establishes that the pickup was used to purchase another vehicle, which Denton testified had been wrecked at the time of the decree. We therefore conclude that the trial court did not abuse its discretion in failing to consider this as an asset of the marital estate.

Next, Mary argues that the trial court abused its discretion in not awarding her alimony. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other enumerated criteria make it appropriate. See Neb. Rev. Stat. § 42-365 (Reissue 1998).

The question presented is whether the trial court abused its discretion in not awarding alimony under the circumstances of this case. The trial court found that Mary had been attending college for the past 4 years and that although she testified that she had no idea what kind of a job she would obtain, she had an earning capacity greater than Denton's. The trial court found that Denton did not have the funds available to pay alimony because the majority of his salary would be used to support his children and pay insurance. We conclude, under the circumstances set forth herein, that the trial court did not abuse its discretion in failing to award alimony to Mary.

At the time of retrial, Denton had a 401K plan with Auburn Ford. The trial court concluded the plan was not relevant apparently on the basis that Denton had begun working for this employer following the parties' separation. Mary argues that the trial court erred in ruling that Denton's current 401K plan was not relevant to the dissolution action and in failing to allow her to adduce evidence of the plan.

During the entire pendency of a dissolution of marriage decree, the marital relation continues. *Choat v. Choat*, 218 Neb. 875, 359 N.W.2d 810 (1984). "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." Neb. Rev. Stat. § 42-366(8) (Reissue 1998). Thus, any pension plan, retirement plan, annuity, and other deferred compensation plan Denton had at the time of trial was relevant to the dissolution action, and the trial court erred in excluding the Auburn Ford 401K plan. We therefore conclude that Denton should pay to Mary one-half of the value of the 401K plan with Auburn Ford computed to August 24, 1999, the date of the decree of dissolution. Denton is ordered

to pay this sum at the rate of $50 per month with interest until the sum has been paid in full.

Mary next argues that the trial court erred in signing the dissolution decree without reading it or determining whether it accurately set forth the findings and orders of the court. In an e-mail the trial court sent to the parties, the court found generally in favor of Denton and against Mary, but made no specific findings or orders. The trial court then requested that counsel for Denton prepare a decree and forward it to the court after it had been approved as to form by Mary's attorney.

We comment on this assignment of error to point out and express our disapproval of such practice. First, the trial court did not make any independent findings of fact. In an action for dissolution of marriage, specific findings of fact must be made as to various contested issues, and it is a trial court's duty to make those findings independently. In the case at bar, the trial court's actions did not conform to the legal standard required.

Next, Mary argues that the trial court erred by not receiving certain exhibits into evidence. We dispose of this assignment of error by noting that the trial court did in fact abuse its discretion and that we have in our de novo review considered such evidence in determining the distribution of property and the award made herein.

Mary next argues that the trial court abused its discretion in not awarding her a reasonable attorney fee and costs incurred in the divorce action. The trial court directed each party to pay any witness fees and costs of service they had incurred. From our de novo review, we conclude that Denton was not forthright in producing certain information with regard to his income. He failed to respond to discovery requests in good faith and in general increased the costs of litigation and impeded the judicial process. The record sets forth that Mary incurred costs for witnesses and sheriff's fees. We award $144.52 of such costs to Mary and tax them against Denton.

In a dissolution of marriage case, an award of attorney fees is discretionary, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997). At trial, Mary asked for an award of reasonable attorney fees and costs. Exhibit

31 is a statement for attorney services rendered between January and March 1999, totaling $2,632.11. Mary testified that in addition to the $2,632.11, she owed a relative $2,500 to repay a loan for attorney fees relating to the appeal. The trial court concluded that it would not be appropriate to award attorney fees based on the financial situation of the parties and the award of assets to Mary. Under the circumstances of this case, since we have now adjusted the distribution of assets, we decline to modify the trial court's order as to attorney fees.

## CONCLUSION

The trial court abused its discretion in not considering the liquidated Gerber retirement account, the Auburn Ford 401K plan, and the proceeds from the sale of the real estate in determining the value of the marital estate. The trial court also abused its discretion in not awarding certain costs to Mary that were incurred during the trial. We decline to modify the trial court's order as to alimony or attorney fees. We award Mary $500 for the services of her attorney in this court.

We therefore affirm in part, and in part reverse the judgment and remand the cause with directions that the trial court enter an order in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.