Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/24/2018 09:08 AM CDT

JASON L. ARMKNECHT, APPELLANT, V.
ALITA M. ARMKNECHT, NOW KNOWN
AS ALITA M. REYNOLDS, APPELLEE.
___ N.W.2d ___

Filed August 24, 2018.    No. S-17-377.

1. **Modification of Decree: Child Support: Appeal and Error.**
   Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. The same standard applies to the modification of child support.
2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.
3. ____: ____. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Child Support.** As a general matter, the parties' current earnings are to be used in calculating child support.
6. **Rules of the Supreme Court: Child Support.** In general, child support payments should be set according to the Nebraska Child Support Guidelines.
7. **Child Support.** Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned.
8. ____. The court may add "in-kind" benefits derived from an employer or other third party to a party's income for purposes of calculating child support.

9. ____. In determining child support, a court's findings regarding an individual's level of income should not be based on the inclusion of income that is entirely speculative in nature.

10. **Courts: Child Support.** The trial court has discretion to choose whether and how to calculate a deduction for subsequent children.

11. **Child Support.** No precise mathematical formula exists for calculating child support when subsequent children are involved, but the court must perform the calculation in a manner that does not benefit one family at the expense of the other.

12. **Modification of Decree: Child Support: Proof.** The party requesting a deduction for his or her obligation to support subsequent children bears the burden of providing evidence of the obligation, including the income of the other parent of the child.

Appeal from the District Court for Gage County: DANIEL E. BRYAN, JR., Judge, Retired. Affirmed.

Louie M. Ligouri, of Ligouri Law Office, for appellant.

Mark J. Krieger and Terri M. Weeks, of Bowman & Krieger, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, and FUNKE, JJ., and DERR and URBOM, District Judges.

URBOM, District Judge.

## INTRODUCTION

Jason L. Armknecht appeals the modification order entered by the district court for Gage County, which modified his child support obligation to his former wife, Alita M. Armknecht, now known as Alita M. Reynolds. Jason argues the district court erred in the calculation of child support. For the reasons set forth below, we affirm the order of the district court.

## BACKGROUND

Jason and Alita married in September 1997 and divorced in November 2007. They have three children: Logan Armknecht, born in 1998; Rees Armknecht, born in 1999; and Alexia Armknecht, born in 2004. In the decree, Alita was granted physical custody of all three children, subject to Jason's

parenting time, and Jason was ordered to pay child support in the amount of $950 per month. The decree ordered that such child support would be reduced to $700 for two children and $475 for one child.

In April 2016, Jason filed a complaint for modification of the decree on the basis that the parties' middle child, Rees, had "expressed a strong and consistent desire" to live with Jason and had been staying with him since January 1, 2016. Jason sought modification of custody with respect to Rees and a reduction in his child support obligation due to such change in custody. Alita counterclaimed for modification of child support, alleging there had been a material change in circumstances that would result in an increase in Jason's support obligation of more than 10 percent.

At the time of trial, Logan had reached the age of majority, Rees was living with Jason, and Alexia remained living with Alita. The parties stipulated that the split custody computation for child support would be retroactive to May 1, 2016, which was the first month following the filing of the complaint for modification. The evidence also showed that Jason had two subsequent children at the time of trial: a child born in February 2015, and a child born in October 2016.

## EVIDENCE OF INCOME

The incomes of Jason and Alita were highly disputed at trial. Both parties remarried, and both were currently employed by their respective spouses. The evidence showed that in 2015, Jason began working as a full-time sales associate for an insurance agency owned by his wife, Tasa Paul (Tasa). At the time of trial in February 2017, Jason's two most recent pay stubs showed that he was earning $1,650 per month, although he earned significantly more the previous year. Jason's 2016 pay stubs showed that he earned $3,750 per month from January through May and $2,100 per month from June through December. Tasa testified that his salary was reduced in June 2016 because she eliminated the marketing and overhead allowances that he had been given for the first part of that

year. She explained that the agency had qualified for extra marketing dollars from the company at the end of 2015, so she decided to give Jason some extra marketing money to see if he could bring in more business. Starting in June, she went back to her previous practice of covering overhead expenses through the agency rather than having Jason pay for those expenses from his salary, and decided to eliminate some of the marketing expenses altogether because she decided the practice was not feasible.

Tasa testified that the reduction in Jason's salary from $3,750 to $2,100 in June 2016 was unrelated to the filing of his complaint to modify child support in late April 2016. She further testified that Jason first met with his attorney in December 2015, after which his income actually increased in January 2016 before it was reduced in June. However, there was no testimony to explain why Jason's salary was again reduced to $1,650 in January 2017. When asked about Jason's earning capacity, Tasa testified that she did not believe it was greater than $24,000 annually at that time and explained that his salary was very typical for his level of experience in the industry. She testified that she expected Jason's income to continue at an amount close to $2,100 per month through the calendar year.

Prior to working for Tasa, Jason was a self-employed construction worker. His tax returns for the 5 preceding years reflect that his income averaged $11,127 per year, or approximately $927 per month. However, his taxable income was greatly reduced due to deductions of business expenses in those years.

Alita testified that she works as an administrative assistant for BeachLifestyle Enterprises, LLC, which is a company owned by her husband, Gary J. Reynolds (GJ). Her income, as shown on her W-2 wage and tax statements, was $32,000 in 2013; $11,769 in 2014; and $25,000 in 2015. There was no explanation provided for the fluctuation in her income from year to year, and she did not produce any evidence of her income for 2016 or the first part of 2017.

Another contested issue at trial was whether Alita was earning any additional income through "ViSalus," a company for which both she and GJ are promoters. Jason submitted several photographs into evidence showing GJ and Alita holding placard-sized checks from ViSalus, payable to "GJ & Alita Reynolds" in various amounts. The first photograph was taken in 2012 and shows them holding one check for $100,000 and another for $250,000. When asked if the exhibit accurately depicted what was shown in the photograph, Alita indicated that both of their names were included on the checks for "recognition purposes only." She further stated that "we only were able to receive that money if we continued at a certain level, and we did not." The next photograph was taken in 2014 and shows another check made out to "GJ & Alita Reynolds" in the amount of $2 million. Another exhibit contains a promotional photograph of GJ and Alita, and states: "WE CONGRATULATE GJ & ALITA REYNOLDS FOR REACHING $2,000,000 IN ViSALUS EARNINGS." The final photograph was taken in 2016 and shows GJ and Alita holding a large placard containing both of their names, stating: "OVER $4,000,000 ViSalus Lifetime Earnings Award." At the bottom of the placard in smaller lettering, it further states: "NOT AN ACTUAL CHECK. REFLECTS TOTAL EARNINGS OVER TIME." Alita testified that some of the sums shown on these checks were earned by GJ prior to their marriage.

Given this evidence of income through ViSalus, Jason argued that a portion of the income shown on GJ and Alita's joint tax returns was attributable to her. Their joint tax returns showed a total income for each year as follows: $187,506 in 2012; $387,483 in 2013; $33,548 in 2014; and $50,677 in 2015. However, Alita testified that her personal income was limited to the wages shown on her W-2 wage and tax statements and that the remaining income shown on the joint tax returns was attributed to GJ's wages and corporate income from his company.

In addition to the ViSalus evidence, Jason also presented evidence of nonwage benefits Alita received from her employer.

In November 2014, BeachLifestyle Enterprises deeded a piece of real estate to GJ and Alita as joint tenants. They received the property free and clear and then sold it approximately 2 years later for $315,000. Alita also drives a BMW sedan, which she testified was given to her by her employer.

## District Court Findings

After the close of the evidence, the district court stated its findings as follows: "[T]he calculation of income that I've seen basically in the original decree really hasn't changed dramatically here. And so I'm going to find that his is — I'm going to leave his at 3100 and hers at 3,333 a month." It then instructed Alita's counsel to prepare new child support calculations using those incomes, with credit for Jason's two subsequent children, and submit an order to the court within 10 days.

The district court subsequently entered a written order awarding physical custody of Rees to Jason and finding that a material change in circumstances had occurred due to that change in custody. It found that the income of the parties at the time the decree was entered in 2007 was an appropriate estimation of their actual earning capacity. Given the varying number of children and subsequent children being supported at various times, the district court's order split the child support computation into four different time periods, as shown in the chart below.

| Date | Split Custody | Subsequent Child Credit | Final Support |
|---|---|---|---|
| May 1 to October 31, 2016 | $288 (F) (3 children) | $66 (1 child) | $222 (F) |
| November 1, 2016, to January 31, 2017 | $288 (F) (3 children) | $113 (2 children) | $175 (F) |
| February 1, 2016, to March 31, 2018 | $3 (F) (2 children) | $113 (2 children) | $110 (M) |
| April 1, 2018, and thereafter | $612 (F) (1 child) | $113 (2 children) | $499 (F) |

## ASSIGNMENTS OF ERROR

Although Jason assigns seven errors on appeal, his assignments of error, as argued, can be consolidated into three. He argues the district court erred in (1) basing the child support order on the former income of the parties from 2007, rather than using their current incomes; (2) failing to make findings on contested matters at trial and instead adopting the child support calculations and order prepared by Alita's attorney; and (3) improperly calculating the deduction for Jason's subsequent children.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.[1] The same standard applies to the modification of child support.[2]

[2,3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[3] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[4]

[4] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[5]

---

[1] *Johnson v. Johnson*, 290 Neb. 838, 862 N.W.2d 740 (2015).

[2] *Id.*

[3] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[4] *Id.*

[5] *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

## ANALYSIS

### Determination of Income

Jason asserts that the district court erred in basing the child support order on the former income of the parties from 2007, rather than using their current incomes. In doing so, the court set Jason's income at $3,100 per month, but he argues his current income at the time of trial was no more than $2,100 per month. Regarding Alita's income, Jason argues the district court failed to consider evidence of her substantial earnings from ViSalus and significant nonwage benefits provided by her employer.

Alita argues that the evidence clearly showed that Jason was earning $3,750 per month before he filed the complaint for modification. She argues that the reduction of his salary to $2,100 per month in June 2016 by Tasa was directly related to the filing of his complaint to modify in late April 2016. Alita argues that her income is limited to her earnings of $25,000 per year as an administrative assistant for BeachLifestyles Enterprises, as shown on her W-2 wage and tax statements. She asserts that the ViSalus income is generated by GJ's company, which he owned prior to their marriage and in which she has no ownership interest.

[5] As a general matter, the parties' current earnings are to be used in calculating child support.[6] However, it appears here, based on the statements made by the district court on the record, that it did not find either party's evidence of current income to be credible. The court stated:

> I know that, based on these circumstances, there's no question you, from a judge's standpoint, you're looking at what we consider a little bit of a shell game here for — probably for both sides, based on the situations that they're in.

---

[6] *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

I mean, he's just not working for a third party. He's working for his wife.

She's not just working for a third party. She's working for her husband.

[6,7] Given the wide discrepancy of evidence of the parties' current incomes and the fact that both parties' incomes are controlled by their respective spouses, we cannot say that the district court erred in setting the parties' incomes based on their earning capacities. In general, child support payments should be set according to the Nebraska Child Support Guidelines.[7] However, the guidelines provide that if applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities.[8] Use of earning capacity to calculate child support is useful when it appears that the parent is capable of earning more income than is presently being earned.[9]

Here, the evidence showed that Jason was earning $3,750 per month at the time he filed the complaint for modification. Although there was testimony from Tasa that some of that income was to be used for marketing and overhead expenses, there was no evidence that any such expenses were ever incurred or paid by Jason. We find no abuse of discretion in the district court's setting his income at $3,100 per month based on his earning capacity at the time the original decree was entered and based on the evidence of what he was earning at the time he filed the complaint for modification.

The district court set Alita's earning capacity at $3,333 per month, even though her income had apparently decreased to only $2,000 per month as an administrative assistant for GJ's company. Regarding her earning capacity, the court noted:

---

[7] *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

[8] *Id.*

[9] *Id.*

Now, no one explained to me why she went from $3,[3]33 down to what her husband's willing to pay her, only about 24. I think she — I'm sure she's worth more than $24,000 a year, and at least what she was claiming at $3,333, before — at the time she was divorced.

[8,9] Jason argues that Alita's income should have been higher, because the court failed to consider her earnings from ViSalus and significant nonwage benefits she received from her employer. Although the ViSalus exhibits submitted by Jason appear to attribute substantial income to GJ and Alita, we agree with Alita that those photographs are not evidence of actual income. Regarding the nonwage benefits, there was no evidence that such benefits were a regular source of income for Alita. While a court is allowed to add "in-kind" benefits derived from an employer or other third party to a party's income,[10] a "'court's findings regarding [an individual's] level of income should not be based on the inclusion of income that is entirely speculative in nature.'"[11] Given the speculative nature of the ViSalus income and nonwage benefits, we cannot say that the district court erred in excluding those items from Alita's income, and in setting her earning capacity at $3,333 per month.

## Failure to Make
### Independent Calculations

Jason argues that the district court erred in failing to make independent findings on contested matters and adopting the child support calculations prepared by Alita's attorney, rather than making its own calculations based on its own findings.

Neb. Ct. R. § 6-1504(F) provides as follows:

A worksheet showing calculations under the Nebraska Child Support Guidelines shall be attached to every child support application, order, or decree and shall be prepared

---

[10] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[11] *Gress v. Gress*, 274 Neb. 686, 698, 743 N.W.2d 67, 78 (2007).

by the party requesting child support, except that in a contested matter the worksheet shall be prepared by the court and attached to the order or decree.

He also points to our decision in *Brunges v. Brunges*,[12] in which the trial court generally found in favor of one party and directed counsel for that party to prepare a decree, but did not make any specific findings or orders regarding the contested issues. We expressed our disapproval of such practice and stated, "[i]n an action for dissolution of marriage, specific findings of fact must be made as to various contested issues, and it is a trial court's duty to make those findings independently."[13]

Unlike *Brunges*, here, the district court, on the record, made findings establishing the monthly income for each party and then instructed Alita's counsel to prepare new child support calculations using those incomes, with credit for Jason's two subsequent children. The district court adopted the findings contained in the proposed order and the calculations contained in the worksheet prepared by Alita's counsel. At that point, those proposed findings and calculations became the findings of the district court.

### CREDIT FOR JASON'S SUBSEQUENT CHILDREN

Finally, Jason argues the district court erred in calculating the deduction for his subsequent children, as it resulted in an increase in Jason's child support obligation for Alexia, even though the district court found no change in the parties respective incomes. He argues that the worksheets adopted by the district court erroneously attributed too much monthly income to Jason's current wife, Tasa, when calculating what Jason's support obligation would be for his two subsequent children. This had the effect of lowering his support obligation to his

---

[12] *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000).

[13] *Id.* at 669, 619 N.W.2d at 463.

two subsequent children, which in turn raised his support obligation for Alexia.

[10-12] The trial court has discretion to choose whether and how to calculate a deduction for subsequent children.[14] When the court decides to allow a deduction, the calculation is left to its discretion so long as it considers the obligations to both families and the income of the subsequent child's other parent.[15] No precise mathematical formula exists for calculating child support when subsequent children are involved, but the court must perform the calculation in a manner that does not benefit one family at the expense of the other.[16] The party requesting a deduction for his or her obligation to support subsequent children bears the burden of providing evidence of the obligation, including the income of the other parent of the child.[17]

Here, the district court included worksheets demonstrating that it calculated Jason's subsequent child credit by determining how much child support he would owe to each family under the guidelines, after deducting the support obligation to the other family from his income. It then computed the difference between the amount of support Jason would owe without any subsequent children and the amount he would owe with each subsequent child. That amount was then deducted from his monthly support obligation as a credit for his subsequent children. We believe this method of calculating the subsequent child credit considers the obligations to both families and does not benefit one family at the expense of the other.

Although Jason argues that the worksheets attributed too much monthly income to Tasa when calculating what his

---

[14] *Schwarz v. Schwarz*, 289 Neb. 960, 857 N.W.2d 802 (2015).

[15] *Id.*

[16] *Id.*

[17] *Id.*

support obligation would be for his two subsequent children, we note that Jason did not submit any proposed calculations regarding his support obligations for his subsequent children. We find no abuse of discretion in the calculations used to determine Jason's subsequent child credit.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

Affirmed.