IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


FREYER-REINING V. REINING


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


PAMELA J. FREYER-REINING, NOW KNOWN AS
PAMELA J. FREYER, APPELLANT,

V.

JERRY REINING, APPELLEE.


Filed February 11, 2020.    No. A-19-127.


Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed in part as modified, and in part reversed.

Angela Lennon, of Koenig Dunne, P.C., L.L.O., for appellant.

Matthew Stuart Higgins, of Higgins Law, for appellee.


PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Pamela J. Freyer-Reining, now known as Pamela J. Freyer, appeals the order of the Sarpy County District Court dissolving her marriage to Jerry L. Reining. On appeal, she contends the district court abused its discretion in failing to award her certain real property and a 401K as her premarital property, failing to find that Jerry dissipated marital assets, awarding her certain real property as a part of the court's property division, and calculating the equalization payment due to Jerry. For the reasons set forth herein, we affirm in part, and in part reverse.

## II. STATEMENT OF FACTS

Pamela and Jerry were married in May 2004. Pamela filed a complaint for dissolution of marriage in July 2016. At trial, testimony was elicited, including testimony from Pamela and Jerry.

The following is a summary of the evidence adduced at trial relevant to Pamela's assignments of error.

### 1. iHeart Media 401K

Pamela testified that the entire duration of her employment with iHeart Media took place prior to her marriage to Jerry. During the course of that employment, Pamela established a 401K retirement plan. Pamela also testified she did not make contributions to her iHeart Media 401K at any point during the marriage.

Jerry also provided testimony regarding Pamela's iHeart Media 401K. When asked if Pamela worked at iHeart Media during the marriage, Jerry replied that he was unsure what iHeart Media was but that Pamela had worked at a radio station, KYOR, and a television station.

### 2. Real Property

Prior to the parties' marriage, Pamela acquired real estate known as the Trail Ridge Property. During their marriage, the parties acquired a home together, referred to as the Prairie Ridge Property, and certain other rental properties which served as a source of income to the parties during their marriage. Due to the relevance of the Trail Ridge Property and the Prairie Ridge Property to Pamela's assignments of error, we provide a more detailed recitation of facts relating to each of those properties below.

### (a) Trail Ridge Property

Pamela testified she purchased the Trail Ridge property in 1998, and an exhibit showed the property lot was deeded to her and her ex-husband pursuant to a corporate warranty deed. Pamela testified she resided in the home built on the property in 1999 with her ex-husband. Pamela testified she purchased the Trail Ridge property for approximately $210,000 to $220,000 and paid an additional $38,000 to acquire an adjacent lot of land.

Pamela testified that later, when Pamela and Jerry were married, Jerry moved into the Trail Ridge property with her. Pamela testified there was a mortgage on the Trail Ridge property during her marriage to Jerry, but she paid off the remaining $92,000 on the mortgage. When questioned whether Jerry made any contributions to the Trail Ridge property, Pamela testified "I never once said he made no contributions. That did not come out of my mouth. . . . he made contributions. I cannot quantify them because I don't have his proof of what he contributed." Pamela also testified the parties refinanced the Trail Ridge property to buy the Prairie Ridge property. Pamela testified that she and Jerry eventually rented the Trail Ridge property and that the rent money received was deposited into the parties' joint account.

### (b) Prairie Ridge Property

During their marriage, Pamela and Jerry purchased and subsequently resided in the Prairie Ridge Property. When asked about the disposition of the Prairie Ridge property, Pamela testified that she was requesting the district court order the property be sold and the net proceeds be equally divided. Pamela testified that because she now resides at the Prairie Ridge property, she would be responsible for getting repairs done to the property, but she asked the cost of the repairs be split

equally. Pamela also testified that, in the alternative, she had no objection to Jerry being awarded the property for $918,000.

Jerry initially testified he did not have any objection to the district court ordering the Prairie Ridge property sold, but he objected to being awarded the property. Jerry testified that he did not want the Prairie Ridge property because he has other properties in which he could live and that he feels uncomfortable at the Prairie Ridge property because Pamela had him arrested the last time he was there. Jerry later testified the district court should not sell the Prairie Ridge property and divide the proceeds but should instead award the property to Pamela because, until trial, that was what she wanted and Pamela had not allowed Jerry to use the property for 2 years.

### 3. ASSETS GIVEN TO JERRY'S DAUGHTER

Jerry testified that after he separated from Pamela in 2016, he deposited a total sum of approximately $30,000 into his daughter's account which he received from items he sold. The entire record governing this transfer was captured in the following colloquy:

Q. Going to hand you back, Mr. Reining, after you separated from your wife in 2016, were you giving your daughter Crystal cash gifts?
A. No, I was putting money from the items that I sold into an account of hers.
Q. And what was the total sum of money that you put into her account?
A. Approximately $30,000.

### 4. DISTRICT COURT'S FINDINGS

In September 2018, the district court entered a decree dissolving the parties' marriage. In the decree, the district court outlined the net award of the marital property for Pamela and Jerry as follows:

|  | Pamela | Jerry |
|---|---|---|
| Real Property | $ 918,559 | $ 977,645 |
| Personal Property | 15,500 | 5,500 |
| Vehicles | 39,000 | 79,510 |
| Bank Accounts | 73,470 | 31,383 |
| Retirement | 383,265 | 149,439 |
| Totals | $1,429,794 | $1,243,477 |

The district court stated: "To equalize this discrepancy, [Pamela] shall pay [Jerry] a property equalization payment of $186,317 within 180 days of the entry of this Decree."

In reaching this determination, the district court treated both Pamela's iHeart Media 401K, valued at $38,262, and the Trail Ridge property as marital assets. In making its property division, the district court awarded the iHeart Media 401K account to Pamela along with certain other retirement property totaling $383,265. The district court then awarded the Trail Ridge property, valued at $213,000, to Jerry and awarded the Prairie Ridge property, valued at $918,559, to Pamela.

Pamela filed a motion for new trial requesting the district court reconsider the allocation of property set forth in the decree. Subsequently, the district court entered an order overruling

Pamela's motion for new trial; however, the court did issue an order nunc pro tunc in January 2019. In the nunc pro tunc order, the only change the district court made was to increase the value of Jerry's vehicles from $79,510 to $80,510, as shown below. In its nunc pro tunc order, the district court found:

|  | **Pamela** | **Jerry** |
| --- | --- | --- |
| Real Property | $ 918,559 | $ 977,645 |
| Personal Property | 15,500 | 5,500 |
| Vehicles | 39,000 | 80,510 |
| Bank Accounts | 73,470 | 31,383 |
| Retirement | 383,265 | 149,439 |
| Totals | $1,429,794 | $1,244,477 |

The district court stated: "To equalize this discrepancy, [Pamela] shall pay [Jerry] a property equalization payment of $186,317 within 180 days of the entry of this Decree."

## III. ASSIGNMENTS OF ERROR

On appeal, Pamela assigns, restated and renumbered, that the district court abused its discretion in (1) treating her iHeart Media 401K and the Trail Ridge property as marital assets, (2) ailing to find that Jerry dissipated marital assets, (3) awarding Pamela the Prairie Ridge property rather than ordering it be sold, and (4) calculating the equalization payment due to Jerry.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id*. In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id*. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

### 1. CLASSIFICATION OF MARITAL ASSETS

Much of what Pamela assigns as error relates to the district court's classification of her iHeart Media 401K and the Trail Ridge property as marital assets.

Regarding the marital estate, the Nebraska Supreme Court has articulated:

Under Neb. Rev. Stat. § 42-365 (Reissue 2008), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the

parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. See, *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Plog v. Plog, supra*.

*Despain v. Despain*, 290 Neb. 32, 41, 858 N.W.2d 566, 573 (2015).

In classifying assets as marital or nonmarital property, the Nebraska Supreme Court explained in *Brozek v. Brozek*, 292 Neb. 681, 698, 874 N.W.2d 17, 31 (2016):

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur. The burden of proof rests with the party claiming that property is nonmarital.

Following the trial and prior to dividing the assets, the court first classified Pamela's iHeart Media 401K and the Trail Ridge Property as marital assets.

### (a) Classification of iHeart Media 401K

Pamela first argues the district court abused its discretion when it included her iHeart Media 401K as a marital asset because she did not work at iHeart Media nor make contributions to the iHeart Media 401K during the course of the marriage. Pamela testified that she acquired the iHeart Media 401K prior to her marriage to Jerry, terminated her employment with iHeart Media prior to the marriage to Jerry, and did not further contribute to the 401K after the date of the marriage. Jerry did not directly dispute any of these statements. As such, the evidence clearly established that this asset, as of the commencement of Pamela's marriage to Jerry, was Pamela's nonmarital property. The question then becomes how to classify the growth in this fund during the course of the marriage.

In *Stephens v. Stephens*, 297 Neb. 188, 201, 899 N.W.2d 582, 592-93 (2017), the Nebraska Supreme Court stated the following regarding classifying retirement account growth:

[I]nvestment earnings accrued during the marriage on the nonmarital portion of a retirement account may be classified as nonmarital where the party seeking the classification proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is due solely to inflation, market forces, or guaranteed rate rather than the direct or indirect effort, contribution, or fund management of either spouse. In *Coufal v. Coufal*, [291 Neb. 378, 866 N.W.2d 74 (2015),] we similarly examined whether the increase in the value of the premarital capital in a retirement account was a marital asset. After examining cases from other jurisdictions discussing the active

appreciation rule, we held that the appreciation was nonmarital, because it was not caused by the direct or indirect efforts of "either spouse."

We recently applied this rule in *Schnackel v. Schnackel*, 27 Neb. App. 789, 820, ___ N.W.2d ___, ___ (2019), stating:

> The [*Coufal*] court recognized that in that context, it had previously held that where appreciation of a wife's separate asset was due principally to inflation and market forces and not to any "'significant efforts'" by the husband, the appreciation should not have been included in the marital estate. [*Coufal*, 291 Neb.] at 383, 866 N.W.2d at 78, citing *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982).

Here, Pamela met her burden of proving her iHeart Media 401K was a nonmarital asset. Pamela testified she did not contribute to the iHeart Media 401K during her marriage to Jerry and there was no evidence that the appreciation was due to either of their direct or indirect efforts. This record is simply devoid of any evidence to suggest the increase in value of the iHeart Media 401K was due to anything other than regular inflation and market forces. Accordingly the district court erred in finding the iHeart Media 401K was part of the marital estate.

#### (b) Classification of Trail Ridge Property

Pamela separately argues she met her burden of proving the Trail Ridge property was her nonmarital property; that it retained its status as separate, nonmarital property during the course of the marriage; and that the court erred in classifying it as marital property in connection with its division of assets. She also argues she should be awarded the rental payments for the Trail Ridge property from the date of the dissolution decree.

We first note that even though Pamela argues she should be awarded all the rental payments for the Trail Ridge property from the date of the decree of dissolution, she does not assign as error the district court's failure to award her these rental payments. Because Pamela did not assign this as error, we do not address the issue. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

As to premarital property retaining its status during the course of a marriage, the Nebraska Supreme Court explained in *Osantowski v. Osantowski*, 298 Neb. 339, 351, 904 N.W.2d 251, 262-63 (2017):

> Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. . . . Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur. The burden of proof rests with the party claiming that property is nonmarital.

Prior to her marriage to Jerry, Pamela purchased the Trail Ridge property and then resided in the home for a time with her ex-husband. A corporate warranty deed shows the Trail Ridge property was deeded to Pamela and her ex-husband in 1999. As such there is no question that the Trail Ridge property was originally Pamela's nonmarital property at the time of her marriage to Jerry. Thus, the question becomes whether, during the course of their marriage, the property remained segregated or traceable into its product, or whether it became inextricably mixed with the parties' marital property so as to become marital property during the course of the parties' marriage.

When Pamela and Jerry were married, Jerry moved into the Trail Ridge property with Pamela. Pamela testified she purchased the Trail Ridge property for approximately $210,000 to $220,000 and paid an additional $38,000 to acquire an adjacent lot of land. That said, although Pamela admitted there was a mortgage on the property, she never testified as to the amount of that mortgage or how much equity was contained within the property, if any. Pamela testified that at some point, she paid off the final $92,000 on the mortgage but never specified if that payoff was with marital funds or otherwise. Nor did she testify as to how much of the mortgage had been repaid prior to paying it off and who paid it; although Pamela readily admitted Jerry made contributions to the home during the parties' marriage, she could not quantify his contributions. Further, Pamela testified she and Jerry converted the property into a rental property and that the rent money received was deposited into the parties' joint account. Pamela further stated the renter was separately purchasing the home. Pamela also testified that the parties refinanced the Trail Ridge property to buy the Prairie Ridge property, which became their marital home.

Jerry testified he has managed and maintained his and Pamela's rental properties including the Trail Ridge property from the time they were purchased or converted to rental property through the time of the parties' separation. Jerry also testified he has collected rent on all of the rentals except for the renter at the Trail Ridge property because the renter pays half the rent to Jerry and the other half to Pamela. Pamela testified she and Jerry had a joint rental account and that in addition to rent, they had collected $80,000 from the renter of the Trail Ridge property which they applied toward a purchase of that property. She testified that those separate purchase proceeds may have been deposited into the joint rental account or spent by the parties. Pamela testified the parties had a credit card that was funded by their joint rental account. Expenses incurred on the credit card were utilized for their rental business, vacations, and the parties' personal bills.

Based on the record, it appears the Trail Ridge property became inextricably mixed with marital property during the course of the parties' marriage. Stated differently, upon our de novo review, we hold that the district court did not abuse its discretion in finding that Pamela failed to meet her burden of establishing that the Trail Ridge property should be considered a nonmarital asset. Thus, the district court did not abuse its discretion in classifying the Trail Ridge property as marital property.

2. DISSIPATION OF MARITAL ASSETS

Pamela next assigns that the district court erred when it failed to find that Jerry dissipated marital assets when, prior to the dissolution of his marriage with Pamela, he transferred $30,000 to his biological daughter from another relationship.

In *Anderson v. Anderson*, 27 Neb. App. 547, 561, 934 N.W.2d 497, 510 (2019), we stated: "Dissipation of marital assets" is defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown. *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009). As a remedy, marital assets dissipated by a spouse for purposes unrelated to the marriage should be included in the marital estate in dissolution actions. *Id*.

In *Schnackel v. Schnackel*, 27 Neb. App. 789, 808-09, ___ N.W.2d ___, ___ (2019), this court recently held:

Although no published Nebraska cases specifically articulate the burden of proof with regard to dissipation of marital assets, our case law appears to place the initial burden on the party alleging dissipation, and after sufficient evidence is produced, the burden shifts to the dissipating spouse to prove that the funds were spent for marital purposes. See, *Harris v. Harris,* [261 Neb. 75, 621 N.W.2d 491 (2001)]; *Brunges v. Brunges*, 260 Neb. 660, 619 N.W.2d 456 (2000). This is consistent with the standard set forth in a legal treatise, which provides that a party alleging dissipation of marital property has the initial burden of production and persuasion. 27C C.J.S. Divorce § 998 (2016). See, also, 2 Brett R. Turner, Equitable Distribution of Property § 6:105 (4th ed. 2019). The waste and dissipation of marital assets must be established by a preponderance of the evidence. 27C C.J.S., *supra.* After a party establishes a prima facie case that monies have been dissipated, the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate. *Id.* The spouse charged with dissipation bears the burden of establishing by clear and convincing evidence how the funds were spent. *Id.* Vague and general testimony that marital assets were used for marital expenses is inadequate to meet the spouse's burden to show by clear and specific evidence how the funds were spent, and the trial court is required to find dissipation when the spouse charged with dissipation fails to meet that burden. *Id.*

Because Pamela was the party alleging dissipation, she had both the burden of production and persuasion to establish a prima facie case that Jerry dissipated marital assets. In connection therewith, the sole evidence offered by Pamela in connection with this claim at trial was contained within the colloquy which we set forth, in full, earlier in this opinion in the statement of facts. In sum, the only evidence offered by Pamela to support her claim that Jerry dissipated marital assets was that at some time following their separation, Jerry liquidated some items totaling $30,000 and deposited those funds into his daughter's account. Pamela failed to produce any evidence of what items were sold, whether these items were procured by Jerry prior to or after the parties' separation, when the items were sold, when the proceeds were deposited into Jerry's daughter's account, the extent or nature of Pamela's relationship between herself and Jerry's daughter, or the purpose of the transfer or transfers. Due to the limited testimony and record on this subject, we cannot conclude that the district court abused its discretion in finding that Pamela failed to carry her initial burden with respect to this claim.

### 3. PRAIRIE RIDGE PROPERTY

Pamela argues the district court erred in awarding the Prairie Ridge property to her instead of having the property sold and the equity divided between her and Jerry. Pamela contends the evidence does not support the district court's finding that she should be awarded the Prairie Ridge property. Jerry counterargues that the record does support the district court's decision because Pamela lived on the Prairie Ridge property during the divorce proceedings, and Jerry testified he had no objection to the district court awarding the property to Pamela.

In *Kellner v. Kellner*, 8 Neb. App. 316, 328, 593 N.W.2d 1, 10 (1999), we stated:

We find few Nebraska cases that consider the question of sale of the assets versus distribution in kind. . . .

. . . .

This court observes that in the many appeals for dissolution we have considered in the past several years, as well as the many reported cases we have read while considering these appeals, Nebraska courts do not generally order sales of marital assets to facilitate distribution. In the few cases where a sale is ordered, the sale was the only practical way to divide the parties' assets.

We further stated in *Kellner*:

The lack of dissolution cases where a sale of assets was ordered is itself an indication of the general hesitancy of at least Nebraska courts to force divorcing people to sell their property.

A search for cases in other jurisdictions and general authority on the subject of the sale of assets versus an in-kind division shows that those who have considered the question do not favor forcing the sale of parties' property.

8 Neb. App. at 332, 593 N.W.2d at 12.

During the trial, Pamela testified she lived on the Prairie Ridge property during the divorce proceedings. Pamela also testified that the property should be sold or, in the alternative, the property should be awarded to Jerry. Jerry testified he did not object to the district court awarding the property to Pamela or selling the property, but he did object to the district court awarding him the property. However, later during the trial, Jerry testified he did object to the sale of the property and instead preferred the property be awarded to Pamela. Jerry stated that Pamela should be awarded the property because that was always her position prior to trial. Jerry further testified Pamela has prevented him from using the building on that property for 2 years.

While it is within the purview of the court to order the sale of the property, we cannot say, based on the circumstances of this case, that the district court abused its discretion in awarding the property to Pamela instead of ordering the sale of the property.

### 4. CALCULATING EQUALIZATION PAYMENT

Pamela argues the district court erred in calculating the equalization payment ordered to be paid by Pamela to Jerry because the method used was flawed and the nunc pro tunc order did not properly account for the increase in value awarded to Jerry's vehicles. Based upon our

determination earlier in this opinion, that the district court abused its discretion in including Pamela's iHeart Media 401K in the marital estate, we now address the concerns raised by Pamela and recalculate the equalization payment in this case.

In the present action, the district court initially classified the parties' property and then divided that property between the parties as follows:

|  | Pamela | Jerry |
|---|---|---|
| Real Property | $ 918,559 | $ 977,645 |
| Personal Property | 15,500 | 5,500 |
| Vehicles | 39,000 | 79,510 |
| Bank Accounts | 73,470 | 31,383 |
| Retirement | 383,265 | 149,439 |
| Totals | $1,429,794 | $1,243,477 |

The district court stated: "To equalize this discrepancy, [Pamela] shall pay [Jerry] a property equalization payment of $186,317 within 180 days of the entry of this Decree."

In the district court's nunc pro tunc order, the only change the district court made was to increase the value of Jerry's vehicles to $80,510. In its nunc pro tunc order, the district court found:

|  | Pamela | Jerry |
|---|---|---|
| Real Property | $ 918,559 | $ 977,645 |
| Personal Property | 15,500 | 5,500 |
| Vehicles | 39,000 | 80,510 |
| Bank Accounts | 73,470 | 31,383 |
| Retirement | 383,265 | 149,439 |
| Totals | $1,429,794 | $1,244,477 |

The district court stated: "To equalize this discrepancy, [Pamela] shall pay [Jerry] a property equalization payment of $186,317 within 180 days of the entry of this Decree."

There were two errors in the district court's revised order. First, even though the district court increased the value of Jerry's vehicles by $1,000, the court failed to increase Jerry's total property sum by $1,000. Second, even though the district court noted its intention to then "equalize" Jerry's property sum by a property equalization payment from Pamela, the equalization payment obligation determined by the court did not equalize Pamela's and Jerry's estates. Specifically, the district court ordered Pamela to pay $186,317 to Jerry. We note $186,317 in the initial order is the difference between Pamela's total property and Jerry's total property. However, ordering Pamela to pay Jerry this amount does not equalize the estates because doing so would lead to a total estate of $1,243,477 for Pamela and a total estate of $1,429,794 for Jerry. Accordingly, the district court erred in calculating the equalization payment.

In order to correct these errors and factor for the iHeart Media 401K previously discussed in this opinion, we must recalculate the asset division table as follows: First, the value of Pamela's retirement accounts are decreased by the amount of the iHeart Media 401K, which was $38,262, for a revised retirement account value of $345,003. Second, we must add to Jerry's property total the full value of his vehicle asset value as revised by the nunc pro tunc order. The following table reflects these changes:

|                   | **Pamela**   | **Jerry**    |
| ----------------- | -----------: | -----------: |
| Real Property     | $ 918,559    | $ 977,645    |
| Personal Property | 15,500       | 5,500        |
| Vehicles          | 39,000       | 80,510       |
| Bank Accounts     | 73,470       | 31,383       |
| Retirement        | 345,003      | 149,439      |
| Totals            | $1,391,532   | $1,244,477   |

We then take one-half of the difference between Pamela's total estate and Jerry's total estate, an amount of $73,527.50, and modify the property division order to require Pamela to pay a property equalization payment to Jerry in that amount within 180 days of the revised decree.

## VI. CONCLUSION

For the foregoing reasons, we affirm in part as modified, and in part reverse.

AFFIRMED IN PART AS MODIFIED, AND IN PART REVERSED.