IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SALLAE V. OMAR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RAEHAN Q. SALLAE, APPELLEE,

V.

HAZEM OMAR, APPELLANT.

Filed September 7, 2021.    No. A-21-117.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Brett McArthur for appellant.

Trevin H. Preble for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Hazem Omar appeals the order of the district court for Lancaster County which modified his child support obligation owed to Raehan Q. Sallae for their minor child. Finding no abuse of discretion in the court's decision, we affirm.

## BACKGROUND

Omar and Sallae are the parents of a minor child who was born in 2013. In 2016, the district court entered an order requiring Omar to pay child support of $50 per month. In January 2020, Sallae filed a complaint to modify child support, which alleged that since entry of the original order, one or both of the parties had changed employment and/or had a substantial change in income, that said changes resulted in at least a 10-percent variation of the current child support obligation, and that said changes have lasted for at least 3 months and could reasonably be expected to last for an additional 6 months.

A hearing was held before a child support referee in November 2020. The evidence presented was not particularly clear, but we understand that Omar was employed driving a small truck state-to-state from 2018 until March 2020, when he was laid off due to the coronavirus pandemic. Although his testimony on this topic was imprecise, it generally appears that he received unemployment benefits during that time for approximately 8 to 12 weeks in the amount of $400 or $500 per week. He apparently resumed working for the same employer at some point thereafter until August 2020 and has not worked since that time. When he was working, he was paid by the mile and earned about $1,200 or $1,500 per month, depending on how busy he was. In addition, according to his answers to interrogatories, he did mechanical work on cars for friends, earning an additional $200 to $300 per month. His brothers have been supporting him since he stopped working in August 2020.

Omar was asked whether he is currently able to work 40 hours per week, and he responded that a doctor has told him that he cannot work more than 20 hours per week because he has "a problem with [his] leg." He also alleged that he suffers from sleeping issues, difficulties associating with other people, and anger issues. He did not offer any documentation to support these claims, and despite his testimony, he admitted in his discovery responses that he is able-bodied and capable of maintaining gainful employment, although he denied being able to work 40 hours per week or earn at least $9 per hour. He also stated in his discovery answers that he earned a college degree in Iraq, but at the modification hearing, he testified that he never went to college because he had no right to attend school in Iraq.

At the time of the modification hearing, Sallae was working, earning $18.18 per hour. She carried health insurance for herself through her employer, and the minor child was covered by Medicaid. As of January 2021, however, Sallae was to receive a cost of living increase in her earnings, which would disqualify the minor child from Medicaid eligibility; thus, as of that time, she would need to insure him under the coverage offered through her employer.

Sallae testified that she believed Omar was able-bodied and capable of working 40 hours per week and earning at least $9 per hour. She explained that when she was in a relationship with Omar, around 2015 or 2016, she sought psychiatric help for him for some anger issues and sleeping problems. However, while they were together, he was physically able to work, frequently working "cash-money jobs" and "odd jobs," and worked overtime at times. On cross-examination, Sallae was asked whether it was her position that Omar's ability to hold employment and earn money was the same as it was when they were in a relationship, and she confirmed that it was.

The district court entered an order in January 2021 finding that a material change in circumstances had occurred since entry of the previous order of support in that the incomes of both parties had changed and that the child's needs had increased as a result of the change in health insurance. Thus, the court utilized gross earnings for Sallae of $3,151.20 per month and for Omar of $1,500 per month to calculate child support and ordered Omar to pay $258 per month. The court's calculation granted a credit to Sallae for health insurance premiums paid for the minor child. Omar appeals.

## ASSIGNMENTS OF ERROR

Omar assigns that the district court erred in (1) finding a material change in circumstances warranting an increase in child support and (2) utilizing Sallae's income at the time of the hearing while crediting her with health insurance premiums she was not yet obligated to pay.

## STANDARD OF REVIEW

Modification of child support is entrusted to the discretion of the trial court. *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). An appellate court reviews proceedings for modification of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. *Id*.

## ANALYSIS

In general, Omar asserts that the district court erred in modifying the amount of child support he is obligated to pay to Sallae for their minor child. Child support orders are always subject to review and modification. *Langley v. Langley*, 29 Neb. App. 780, 959 N.W.2d 291 (2021). The party seeking the modification of child support has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. *Id*. A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Id*. But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Id*.

Omar first argues that the district court erred in finding the existence of a material change in circumstances that warranted a modification of child support. He claims that Sallae failed to prove that he had an increase in income or ability to pay since entry of the original decree. We disagree.

Sallae, as the party seeking to modify child support, had the burden of proving a material change in circumstances. The Nebraska Child Support Guidelines establish a rebuttable presumption of a material change in circumstances when application of the guidelines would result in a variation by 10 percent or more, but not less than $25, upward or downward, of the current child support obligation due to financial circumstances which have lasted 3 months and can reasonably be expected to last for an additional 6 months. Neb. Ct. R. § 4-217.

Here, application of the guidelines resulted in a child support obligation of $258 per month, an upward variation of more than $25 and 10 percent of the current obligation of $50 per month. Although our record contains no evidence to establish how the $50 child support obligation was initially established, the rebuttable presumption arises when application of the guidelines would result in the required variation, which in this case, it does. Omar's current obligation was based on his income of $1,500 per month, which was the average income he earned while working at his prior employer from 2018 through 2020. Thus, there was a rebuttable presumption that there had been a material change in circumstances warranting modification.

We find that Omar has not rebutted that presumption. Although he testified that he was limited to working 20 hours per week and denied, in his discovery responses, being able to work 40 hours per week or earn a minimum of $9 per hour, he offered no supporting evidence for those

limitations and admitted through discovery that he was able-bodied and capable of maintaining gainful employment. Further, Sallae testified that Omar struggled with anger and sleeping issues in 2015 or 2016, and yet, he continued to work full time at that time, sometimes even working overtime. Omar also acknowledged that when he was in a relationship with Sallae, she tried to help him obtain disability benefits, but he did not want them, stating, "I refuse . . . I can work; is better for me."

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). As such, we defer to the district court's determination of Omar's credibility, which found that he remained able to earn $1,500 per month as he had done when working at his previous employment.

We recognize that Sallae testified at the modification hearing that Omar's ability to hold employment and earn money was the same at that time as it was when they were in a relationship. We do not view this testimony as confirmation that his earning capacity was identical, but, rather, we understand Sallae to be agreeing that Omar remained able to work 40 hours per week, as he had done when they were together, and was not limited to his claimed 20 hours per week. And Omar's ability to earn $1,500 per month began at least in 2018 and could reasonably be expected to continue for the foreseeable future. We therefore conclude that a material change in circumstances had occurred and that the district court did not abuse its discretion in modifying Omar's child support obligation.

Omar also assigns that the district court erred in calculating child support by utilizing Sallae's income at the time of the hearing while crediting her with health insurance premiums she was not yet obligated to pay. He argues that the court took into consideration the health insurance premium that Sallae would be required to pay for the minor child beginning in January 2021 but did not utilize the corresponding increase in her earnings set to begin that same month. Based on the evidence available for the court's consideration, we find no abuse of discretion in this regard.

Under the child support guidelines, a parent is entitled to a credit for the prorated portion of the health insurance cost he or she expends for the children when the parent submits proof of the cost of the children's health insurance. Neb. Ct. R. § 4-215(A). The parent requesting an adjustment for health insurance premiums must submit proof of the cost for health insurance coverage of the children. *Id.*

An exhibit depicting the cost of health insurance through Sallae's employer was offered and received into evidence at the modification hearing. Omar did not object, and there was no evidence presented to contradict Sallae's testimony that she would be required to cover the minor child with her employer-provided health insurance beginning in January 2021, a little more than a month after the modification hearing was held. As such, the district court did not abuse its discretion in allowing a credit for the cost of the health insurance Sallae would provide for the child.

We also find no abuse of discretion in the court's income calculation for Sallae. In calculating child support, the total monthly income of a parent should include earnings derived from all sources. Neb. Ct. R. § 4-204. The Nebraska Supreme Court has not set forth a rigid definition of what constitutes income, but instead has relied upon a flexible, fact-specific inquiry that recognizes the wide variety of circumstances that may be present in child support cases.

*Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017). This flexible approach in determining a person's income for purposes of child support is taken, because child support proceedings are, despite the child support guidelines, equitable in nature. *Id*.

Here, at the time of the modification hearing, Sallae was earning $18.18 per hour. She anticipated receiving a cost of living increase in her earnings beginning in January 2021, but she did not provide the amount of the anticipated increase, nor did Omar question her on that topic during cross-examination. The child support calculation she proposed was based on her earnings of $18.18 per hour.

A court's findings regarding an individual's level of income should not be based on the inclusion of income that is entirely speculative in nature. *Armknecht v. Armknecht*, 300 Neb. 870, 916 N.W.2d 581 (2018). Given the evidence that was presented at the modification hearing, it would have been speculative for the district court to attribute an increase in earnings of an unknown amount to Sallae. We therefore conclude that it was not an abuse of discretion for the district court to utilize Sallae's income at the time of the hearing for child support purposes.

CONCLUSION

Finding no abuse of discretion in the district court's decision to modify the child support obligation Omar owes to Sallae, we affirm.

AFFIRMED.